# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JOYCE ELAINE SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:18-cv-00917-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Joyce Elaine Sanders ("Sanders") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[2] (Doc. 1). Sanders timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Sanders filed applications for a period of disability, DIB, and SSI on March 10, 2015, alleging disability beginning on February 27, 2015. (Tr. 15, 147-54). The Commissioner initially denied Sanders's claim, (tr. 73-84), and Sanders requested a hearing before an ALJ, (tr. 87-88).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

[2] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI. *See* 42 U.S.C. § 1383(c)(3).

After a June 8, 2017 hearing, (tr. 30-50), the ALJ denied Sanders's claim on August 29, 2017. (Tr. 12-29). Sanders sought review by the Appeals Council, but it denied her request for review on April 18, 2018. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On June 14, 2018, Sanders initiated this action. (Doc. 1).

Sanders was fifty-one years old on the date the ALJ rendered his decision. (Tr. 23). Sanders has past relevant work as a store laborer and conveyor monitor. (Tr. 23, 44-46).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sanders had not engaged in substantial gainful activity since February 27, 2015, the alleged onset date of her disability. (Tr. 17). At Step Two, the ALJ found Sanders has the following severe impairments: diabetes mellitus, diabetic retinopathy, glaucoma, and status post cerebrovascular accident. (Tr. 18). At Step Three, the ALJ found Sanders does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

Before proceeding to Step Four, the ALJ determined Sanders's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Sanders has the RFC

> to perform light work as defined in 20 CFR §§ 404.1567)b) and 416.967(b) with the following exceptions: she cannot do commercial driving; she can frequently stoop, kneel, crouch, and crawl; she is limited to work that can be performed with monocular vision with no fine visual acuity; and she is limited to unskilled work.

4

(Tr. 20). At Step Four, the ALJ determined Sanders could not perform any relevant past work. (Tr. 23). At Step Five, the ALJ determined, based on Sanders's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Sanders could perform. (Tr. 24). Therefore, the ALJ determined Sanders has not been under a disability and denied her claim. (Tr. 24-25).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Sanders presents five objections to the ALJ's decision. Two of these relate to Sanders' testimony: that the ALJ failed to take into account Sanders' "excellent work history," (doc. 15 at 11-12), and that the ALJ failed to adequately consider the side effects of Sanders' medication, (*id.* at 17-18). Sanders also argues the ALJ's RFC finding was conclusory and not supported by substantial evidence, (*id.* at 13-16); that the denial was not based on substantial evidence because the ALJ posed an inappropriate hypothetical question to the vocational examiner ("VE"), (*id.* at 16-17); and that the ALJ erroneously failed to order a consultative evaluation, (*id.* at 18-20). The undersigned addresses the grounds related to Sanders' testimony together, and the rest separately below.

## A. The ALJ Appropriately Evaluated Sanders's Subjective Complaints

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225

(11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, the ALJ articulated the appropriate standard, (tr. 20-21), and then described Sanders's subjective complaints. On a March 24, 2015 function report, Sanders indicated the medications she takes for her conditions cause her to be restless and affect her ability to sleep. (Tr. 20, 193). Sanders also stated she needed help dressing, bathing, and caring for her hair due to vision problems. (Tr. 20, 193-94). Sanders also indicated she needed help taking her medications and could not prepare meals or do household chores. (Tr. 20, 194-95). Due to her vision problems, Sanders indicated she could not handle financial matters. (Tr. 20, 195). Sanders reported she did not have hobbies or interests, although she spent time with others. (Tr. 20, 196). She stated she had to be reminded to go places and had to have someone accompany her. (*Id.*). Reporting on her abilities, Sanders indicated she had difficulties lifting, walking, reaching, stair climbing, seeing, and following instructions because "[a]nything that requires [her] being able to see is affected." (Tr. 21, 197).

The ALJ also recounted Sanders' hearing testimony. (Tr. 21). At the hearing, Sanders testified her vision and fatigue cause her problems. (Tr. 21, 37). The ALJ noted Sanders was wearing glasses at the hearing. (Tr. 21). Sanders indicated she was compliant with her diabetes regimen. (Tr. 21, 37-38). Sanders also testified to minimal and restricted daily activities, including problems bathing, cooking, taking her medications, climbing stairs, and crossing the street. (Tr. 21, 36-37). Sanders also testified she gets tired constantly. (Tr. 36).

As the ALJ stated, the majority of the symptoms Sanders reported related to her vision loss after a stroke; specifically, the vision loss in her left eye. (Tr. 21). However, the record did not reveal that the vision loss extended to both eyes such that Sanders' reports of inability to see as a general matter required the ALJ to credit that Sanders' vision loss was disabling to the extent she claimed. On March 13, 2015, following Sanders' stroke, her vision was evaluated at 20/200 in her right eye and 20/200 in her left eye. (Tr. 317). However, on July 9, 2015, Sanders' vision was rated at 20/40 in her right eye with full visual field and 20/200 in her left eye. (Tr. 366). A visit to Quality of Life on November 19, 2015 revealed decreased vision in Sanders' left eye. (Tr. 389). There are no further reports of vision loss in Sanders' right eye. Further, the ALJ noted Sanders was wearing glasses at the hearing. Sanders testified she had had the glasses a year and had received them following an eye exam. (Tr. 38-39). Although the ALJ did not directly state it, this supports that at least some deficits in Sanders' vision were capable of correction. As the ALJ found, the record does not support binocular vision loss.

The record bears out that Sanders' symptoms related to vision loss. Sanders' diabetes was generally well controlled, although she did have isolated incidents of noncompliance. For example, on July 28, 2015, Sanders was noncompliant with her medications. (Tr. 372). However, there were no apparent associated symptoms, including fatigue. (Tr. 372-76). And on Sanders' next visit, her diabetes was listed as controlled, with the note "this is doing great." (Tr. 380). The record does not reflect any evidence of complaints to health care providers of fatigue, diabetes-related or otherwise, even when Sanders was noncompliant.

Sanders argues the ALJ should have taken her excellent work history into account in assessing her credibility, citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015), (an out-of-circuit decision) and two unpublished cases from district courts in Florida. (Doc. 15 at 11-12). As one

8

of those cases acknowledges, the Eleventh Circuit has never indicated that an ALJ's failure to explicitly consider a claimant's excellent work history is erroneous. *See Mahon v. Comm'r of Soc. Sec.*, No. 8:16-CV-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017). In any event, the ALJ had ample reasons to reject Sanders' complaints of disabling symptoms, and considering her work record would not have changed the dearth of evidence in the record supporting those complaints. The ALJ's decision was not erroneous simply because he did not specifically discuss Sanders' work record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the conclusion as a whole was supported by substantial evidence). As another judge in this district recently stated when faced with the same argument Sanders now raises, "excellent work history alone may be insufficient to enhance a claimant's credibility, but it does not necessarily result in a remand when it is not considered by the ALJ as long as the credibility determination is supported by substantial evidence." *Brothers v. Berryhill*, No. 4:18-CV-01557-JEO, 2019 WL 3555064, at *4 (N.D. Ala. Aug. 5, 2019) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

As far as medication side effects, Sanders points to nothing in the record to support that she complained of any. Sanders did not testify to side effects at the hearing. There are no reports of medication side effects in the record apart from a brief mention in Sanders' function report, which was insufficient to demonstrate that her side effects had any disabling effects. In any event, the only record evidence bearing on the side effects Sanders identified in the function report was a denial of sleep disturbances in April 2015, (tr. 323). With no evidence of disabling side effects in the record, the ALJ was not under an obligation to investigate on his own to determine whether any existed. *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010).

**B. The ALJ's RFC Finding Did Not Violate SSR 96-8p[5]**

Next, Sanders alleges the ALJ erred by restricting her to light work with limitations. (Doc. 15 at 13-15). To support this, she cites SSR 96-8p, which she claims the ALJ violated:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184 at *7.

Sanders contends the ALJ's findings are conclusions without analysis, which violates the ALJ's obligation to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." (Doc. 15 at 13) (citing SSR 96-8p, 1996 WL 374184 at *7). The Eleventh Circuit has held even when an "ALJ could have been more specific and explicit in his findings," he still complies with SSR 96-8p when he considers all the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007). The ALJ's statement that he specifically complied with SSR 96-8p by basing his RFC on "all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments," (tr. 20), and considered the evidence in compliance with 20 CFR §§ 404.1529, 416.929, 404.1527, and 416.927, (tr. 20), coupled with his extended recounting of the evidence in this case, (tr. 20-23), indicates he did so. Contrary to Sanders' argument the

---

[5] Sanders occasionally refers to this as "SSR 96-8a."

findings are conclusory, the ALJ explained at multiple points how the evidence related to the functional limitations in the RFC.

Sanders' contention that she should have been found to have been restricted to sedentary work (and thus disabled under the Commissioner's "grid" rules), (doc. 15 at 13), is meritless. Although Sanders states that the ALJ found that she only "has minor physical limitations," (doc. 15 at 14), the RFC itself belies that assertion. Specifically, the RFC's restriction to light work substantially limits what Sanders could be expected to do—it is itself a set of more-than-minor functional limitations. Further, the RFC includes additional restrictions: climbing, working around hazards, commercial driving, and postural limitations. Significantly, the RFC accounts for vision problems, which the record supports is Sanders' chief limitation; it limits her to "work that can be performed with monocular vision with no fine visual acuity." Sanders does not point to anything in the record that would justify further restrictions, and the undersigned has located nothing that would do so, either. Examinations repeatedly showed normal musculoskeletal function, including a normal range of motion, muscle strength, and negatives for muscle weakness. (*See, e.g.,* tr. 229, 232-33, 236-37, 241-42, 246, 270, 289, 296, 302, 304). Although Sanders reported mild arm and shoulder pain in early- to mid-2016, (tr. 398, 411), X-rays were negative, (tr. 449), muscle relaxers helped, (tr. 398, 411), and Sanders' reports of this condition ceased on subsequent visits, (tr. 418, 424, 430, 436, 443). Furthermore, Sanders testified none of her doctors had restricted her functioning in any way. (Tr. 35). There was no need for the ALJ to specifically explain the exertional restrictions reducing Sanders to light work when the record does not refute she could do so. Accordingly, the undersigned concludes the ALJ complied with SSR 96-8p in deriving Sanders' RFC.

**C. The ALJ's Question to the Vocational Examiner Was Not Erroneous**

Sanders's second argument is that the ALJ erroneously relied on the testimony of the vocational examiner ("VE") because the ALJ asked an "inaccurate and incomplete hypothetical question," (doc. 10 at 15). Sanders' basis for this is that the ALJ's hypothetical assumed she could do light work with limitations—in other words, that the RFC was incorrect. (*Id.*). In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). For the reasons stated above, however, the ALJ appropriately found Sanders could perform light work. Therefore, it was not error for his hypothetical to assume she could do so; the ALJ was not required to include limitations (e.g., work at a lower exertional level) he found to be unsupported. *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Accordingly, the VE's testimony was substantial evidence supporting the ALJ's RFC.

**D. The ALJ Did Not Err by Failing to Order a Consultative Examination**

Sanders' final argument is that the ALJ should have ordered a consultative examination. (Doc. 15 at 18-20). The ALJ is "not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). It is not clear why Sanders contends the ALJ was required to order a consultative examination; her brief does not identify anything she contends is a specific gap in the record. (*See* doc. 15 at 18-20).

To the extent the references to mental impairments contained in Sanders' citations to authority, (doc. 15 at 19-20), imply that the record did not contain enough evidence for the ALJ to draw a conclusion as to Sanders' mental condition, the ALJ noted that the lone report in the record of such issues is a December 31, 2015 visit to Quality of Life. (Tr. 22, 391). Sanders reported

confusion and memory loss; while the nurse practitioner noted Sanders was alert and oriented on all axes, she also indicated Sanders could have some change in her cognitive functioning. (Tr. 22, 391). The proposed plan was word games and memory prompts, with a report back if the symptoms worsened. (Tr. 22, 395). No subsequent examinations revealed anything other than normal mental symptoms and memory. (Tr. 402, 408, 415, 421, 427, 433, 440, 446). Additionally, Sanders was reported to have no neurological issues following her stroke beyond vision loss. (Tr. 298). Finally, Sanders did not allege cognitive impairments during the administrative process, nor did she testify to cognitive impairments during the hearing. (Tr. 22). The ALJ's synopsis is consistent with the record, and he was not required to order additional evaluation on this record.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Sanders's claim for a period of disability, DIB, and SSI is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 27th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE